# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

JOSEPH LUIS LEVIN,

      Petitioner,

v.                                     Case No. 3:20-cv-1442-TJC-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I.   Status

      Petitioner, an inmate of the Florida penal system, initiated this action by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1). Petitioner challenges a state court (Nassau County, Florida) judgment of conviction for six counts of lewd or lascivious battery, one count of soliciting a child via computer, and one count of traveling to meet a minor. Petitioner is serving a forty-four-year term of incarceration. Respondents filed a Response (Doc. 27; Response) with exhibits (Docs. 27-1 to 27-35; Ex.). Petitioner filed a Reply (Doc. 61). This case is ripe for review.[1]

---

[1] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must

## II.   <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

_____

consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not

3

mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope

4

v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365-66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (internal citations modified).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state

procedural rule. <u>See, e.g.</u>, <u>Coleman</u>, 501 U.S. at 747-48; <u>Wainwright v. Sykes</u>, 433 U.S. 72, 84-85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See, e.g.</u>, <u>Walker v. Martin</u>, 131 S. Ct. 1120, 1127-28 (2011); <u>Beard v. Kindler</u>, 130 S. Ct. 612, 617-18 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S. at 750.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012) (internal citations modified). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494).

6

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations modified).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such

evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

The two-part Strickland test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must still demonstrate that counsel's performance was deficient. See id. at 56-59; Lynch v. Sec'y Fla. Dep't of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would

not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59 (footnote omitted); <u>Lynch</u>, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional

9

assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III. <u>Analysis</u>

### A. Ground One

Petitioner argues that "[a]ll responsible parties under the Judiciary Branch of the State Government, i.e. appointed counsel for defense, counsel for the State, and the trial court, failed to timely observe the procedures adequate to determine Petitioner's competency and protect his right to not be tried or convicted while incompetent to stand trial, depriving him of his due process right to a fair trial convicting and sentencing him while incompetent contrary to well established federal laws (violation 5, 6, 14 U.S. Const. amend)." Doc. 1 at 17; <u>see also</u> Doc. 1-2 at 2-11; Doc. 1-3 at 2-15. Petitioner advises that he raised this claim as issue three in his postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850, and as issue one in his state court habeas corpus petition. Doc. 1 at 18.

In his Rule 3.850 motion, Petitioner argued, <u>inter alia</u>, that his counsel was ineffective for failing to investigate his competency and request a competency hearing prior to allowing Petitioner to enter a guilty plea. The postconviction court initially denied Petitioner's Rule 3.850 motion, but on appeal, the First District Court of Appeal reversed as to these two claims regarding Petitioner's alleged incompetency and affirmed as to all other claims. <u>See</u> Exs. Q, T. On remand, the postconviction court again summarily denied the claims regarding Petitioner's alleged incompetency, finding as follows:

> As a threshold matter, this Court notes that the first of Defendant's remanded claims necessarily informs the result of the second. In the first remanded ground, Defendant alleges that his attorney was ineffective because she did not investigate Defendant's competency prior to Defendant entering his plea. In the second remanded ground, Defendant alleges that his attorney was ineffective because she failed to move for a competency hearing prior to Defendant entering his plea. It is obvious that there can be no prejudice in failing to move for a competency hearing if Defendant was, in fact, competent. Additionally, if Defendant was competent, there can be no prejudice in failing to investigate Defendant's competency. Thus, the two remanded claims are inextricably intertwined: if Defendant's first claim succeeds, his second claim will necessarily also succeed. Likewise, if Defendant's first claim fails, his second claim will necessarily also fail. Therefore, this Court will address Defendant's two claims remanded collectively.
>
>           . . . .
>
> Here, the record shows that, contrary to what Defendant now alleges, Defendant's attorney had no

11

legal basis to file such a motion prior to Defendant's plea.

On March 18, 2015, Defendant entered his guilty pleas in this case. Prior to receiving Defendant's pleas, the trial court conducted an extensive colloquy with Defendant. Inter alia, Defendant affirmed that his attorney did everything he asked of her and that there were no further actions he wanted his attorney to take prior to Defendant entering his pleas. Defendant swore that he was entering his pleas because he was, in fact, guilty of the crimes alleged. He further swore that he entered his pleas freely, willingly, and voluntarily, and that he did so free from the influence of drugs, alcohol, or medication. Defendant also acknowledged his awareness that the State possessed DNA evidence incriminating to Defendant. The trial court, having the benefit of observing Defendant's demeanor and responses to its questions, found that Defendant entered his pleas freely, willingly, and voluntarily. The trial court also found that Defendant entered his pleas without the impediment of any disability, substance, drug, or condition that would interfere with his ability to understand and appreciate the terms of his plea agreement and its consequences.

On March 25, 2015, Defendant filed his first motion to withdraw plea pursuant to Florida Rule of Criminal Procedure 3.170. In that motion, Defendant offered as the sole basis for his motion that he believed the guilty pleas he entered on March 18, 2015 would resolve both the instant case as well as another one of Defendant's pending criminal cases. The trial court denied Defendant's motion and proceeded to sentence Defendant on July 9, 2015. Defendant testified on his own behalf at the sentencing hearing, during which he admitted responsibility for his actions and admitted that he "did something that was completely awful." As with Defendant's first motion to withdraw plea,

Defendant did not make any mention of his mental health or competency.

On July 15, 2015, Defendant filed another motion to withdraw plea pursuant to Rule 3.170. Defendant based his motion entirely on allegations that he received various instances of legal misadvice from his attorney. Defendant's motion made no reference to his competency or mental health. On September 11, 2015, Defendant's postconviction counsel (Ms. Nicole Jamieson) filed an amended version of Defendant's second motion to withdraw plea. In that motion, Defendant's postconviction attorney argued that Defendant's plea was involuntary because it (a) was based on legal misadvice from his trial attorney, (b) was given while Defendant was in an adversarial relationship with his trial attorney, and (c) was a product of Defendant's misunderstanding concerning which cases his pleas would resolve. Again, the motion advanced no arguments pertaining to Defendant's competency. The trial court held a hearing on Defendant's motion to withdraw plea, at which Defendant testified. Defendant did not make any assertions concerning his competency or mental health. Ultimately, the trial court denied Defendant's motions to withdraw plea.

At the hearing on Defendant's second motion to withdraw plea, Defendant's trial attorney testified. She testified that she had Defendant evaluated twice between his plea and his sentencing. Dr. Meadows completed the second evaluation. Dr. Meadows produced a report, which concluded that Defendant was competent. Indeed, Dr. Meadows's report found that Defendant did not suffer from any genuine mental illness or psychotic disorder. Instead, Dr. Meadows found that Defendant had a "strong tendency to malinger psychiatric disturbances for secondary gain." Dr. Meadows pronounced Defendant legally sane and not in need of any psychiatric treatment services.

13

. . . .

Here, the portions of the record cited above conclusively demonstrate that Defendant cannot carry his burden of setting forth clear and convincing circumstances which gave rise to a real, substantial, and legitimate doubt about his competency at the time he entered his pleas on March 18, 2015. Indeed, the record shows that Defendant had sufficient ability to rationally consult with his attorney and that Defendant demonstrated a rational and factual understanding of his case. See Fla. R. Crim. P. 3.211(a)(1). Defendant's attorney had no basis to investigate Defendant's competency or move for a competency hearing prior to Defendant's plea hearing because she did not have a reasonable ground to believe that her client was not mentally competent to proceed. See Fla. R. Crim. P. 3.210(b). In fact, Defendant made no mention of his competence or mental health at any time during his plea and sentencing hearings. Nor did Defendant advance any competency arguments within any of his motions to withdraw plea, or during his testimony in support of the last of those motions. Moreover, the existing record, including Dr. Meadows's report, proves that even if Defendant's attorney had moved for and received a competency hearing, the court would have adjudicated Defendant competent to proceed. On the facts of this case, Defendant can demonstrate neither deficiency nor prejudice as required under Strickland and Thompson.[2] As such, he is not entitled to postconviction relief.

Ex. U at 132-36 (internal record citations omitted). Petitioner appealed, and the

First DCA per curiam affirmed the postconviction court's denial without issuing

a written opinion. Ex. X.

---

[2] Thompson v. State, 88 So. 3d 312 (Fla. 4th DCA 2012).

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, to the extent Petitioner contends his trial counsel was ineffective for failing to investigate his competency and request a competency hearing prior to his guilty pleas, such claim is denied.

Insofar as Petitioner argues that the trial court erred by failing to investigate his competency or by adjudicating him guilty and sentencing him while he was allegedly incompetent, his claim is procedurally barred.[3] Petitioner acknowledges that he did not raise such a claim on direct appeal. See Doc. 1 at 18; see also Ex. I (initial brief on direct appeal). And while he contends that he raised this claim in a state habeas petition, that petition was "denied as procedurally barred." Ex. GG. Petitioner has not shown cause or prejudice to excuse his procedural bar, nor has he shown a fundamental miscarriage of justice would result if the Court does not address this claim on the merits. As

---

[3] Respondents interpret Ground One as a trial court error claim only and contend that the claim is procedurally barred. See Doc. 27 at 13-19.

such, Petitioner's claim that the trial court erred by failing to investigate his competency is denied.[4]

To the extent Petitioner is attempting to raise a substantive claim of incompetency, <u>see</u> Doc. 61 at 5-10, his claim is denied. To succeed on a substantive incompetency claim, a petitioner must demonstrate by a preponderance of the evidence that he was in fact incompetent at the relevant time. <u>Medina v. Singletary</u>, 59 F.3d 1095, 1106 (11th Cir. 1995); <u>see also</u> <u>Johnston v. Singletary</u>, 162 F.3d 630, 637 n.7 (11th Cir. 1998). The standard for assessing a criminal defendant's mental competency is set forth in <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960). The <u>Dusky</u> standard requires a court to determine whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." <u>Id.</u>; <u>see also</u> <u>Godinez v. Moran</u>, 509 U.S. 389, 401-02 (1993) (holding the <u>Dusky</u> standard similarly applies in guilty pleas). "The best evidence of [a petitioner's] mental state . . . is the evidence of his behavior" at the relevant time, such as during trial or a plea hearing. <u>Wright v. Sec'y for Dep't of Corr.</u>, 278 F.3d 1245, 1259 (11th Cir. 2002). A petitioner must do more than assert he

---

[4] Even if the trial court error claim was not procedurally barred, it has no merit. Based on the record, especially the plea and sentencing transcripts, there was no reason for the trial court to <u>sua</u> <u>sponte</u> inquire into Petitioner's competency.

was suffering from a mental deficiency at the time. See Medina, 59 F.3d at 1106 ("A petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency."). Indeed, "not every manifestation of mental illness demonstrates incompetence . . . ; rather, the evidence must indicate a present inability to assist counsel or understand the charges." Id. at 1107 (internal citations omitted); see also Wright, 278 F.3d at 1259 ("[T]he standard of proof is high and the facts must positively, unequivocally, and clearly generate the legitimate doubt about whether the petitioner was mentally competent when he was tried." (internal quotations and citation omitted)).

At the conclusion of Petitioner's plea hearing on April 29, 2015, Petitioner's trial counsel asked the court to schedule the sentencing six weeks out so that she had time "to get an evaluation done," and "to get some witnesses for Mr. Levin and have [her] investigator be able to talk to them." Ex. C at 12-13. On June 13, 2015, at a status hearing before the sentencing, Petitioner's trial counsel represented that she had "a mental health evaluation done on [Petitioner]," and because she had concerns based on the result, she had "a second mental health evaluation performed." Ex. B at 326. She continued that based on the results of the second evaluation, she was "confident in going forward" and she advised that she had spoken with Petitioner and "explained this to him." Id. At the sentencing hearing on July 9, 2015, there was no mention of Petitioner's alleged incompetency. See Ex. F. Likewise, there was no mention

of Petitioner's alleged incompetency in the motions to withdraw his plea that he or his court-appointed counsel[5] subsequently filed. <u>See</u> Ex. A at 87-91, 109-36; Ex. B at 251-58. At the hearing on Petitioner's second motion to withdraw his plea, his trial attorney testified that she had him evaluated twice between his guilty pleas and sentencing, and while the first evaluator recommended that a motion to withdraw the plea be filed because Petitioner was suffering from delusions and some other things, the second evaluator found Petitioner was competent. <u>See</u> Ex. U at 304-05, 308-09. Petitioner also testified during that hearing and did not assert any claim of incompetency or exhibit any behaviors that would call his competency into question. <u>See id.</u> at 317-49. On cross-examination, he repeatedly expressed difficulty in remembering some details about his case, especially from the plea hearing. <u>See id.</u> at 327-49.

Petitioner apparently also relies on competency evaluations that occurred in relation to Petitioner's other criminal case approximately two years <u>after</u> he entered his guilty plea. <u>See</u> Doc. 1-4 at 48-58, 59-60, 61-65, 70-79, 80-86, 87-88; <u>see also</u> Doc. 61 at 7-8. The gist of these evaluations was that Petitioner was competent to proceed when he was on medication, but when he stopped taking his medication, he would decompensate. But these evaluations occurred two years after Petitioner pled guilty in this case. And while these evaluations are

---

[5] On August 18, 2015, after the sentencing hearing, trial counsel withdrew due to a conflict of interest and the trial court appointed conflict-free counsel. <u>See</u> Ex. A at 172.

relevant, they do not counter the evidence showing that at the time of his plea and sentencing, he had the ability to consult with his lawyer "with a reasonable degree of rational understanding" and he had "a rational as well as factual understanding of the proceedings against him." <u>Dusky</u>, 362 U.S. at 402; <u>see</u> <u>Wright</u>, 278 F.3d at 1259 (reasoning that the petitioner's "incompetency to stand trial seven and eight months" after his trial, "like his incompetency to stand trial seventeen years earlier, is relevant, but it is not enough to counter the best evidence of what his mental condition was at the only time that counts, which is the time of the trial"). Upon review of the record, the Court finds that Petitioner has failed to demonstrate that he was incompetent at the time of his plea or sentencing. Thus, insofar as Petitioner raises a substantive incompetency claim, the claim is denied.

### B. Grounds Two, Three, and Four

In Ground Two, Petitioner argues that "Counts One and Two violate the prohibition against double jeopardy punishing the Petitioner multiple times for the same identical conduct (violation of U.S. Const. amend 5, 14)." Doc. 1 at 19. In Ground Three, Petitioner contends that his convictions under counts three and four violate double jeopardy. <u>Id.</u> at 20. Similarly, in Ground Four, Petitioner argues that his convictions under counts five and six violate double jeopardy. <u>Id.</u>; <u>see also</u> Doc. 61 at 12-21 (addressing Grounds Two through Four). He contends that he raised these double jeopardy claims in a Rule 3.800(a) motion,

as well as in "a multitude of motions and petitions,"[6] including the following case numbers: 1D19-3578,[7] 1D20-0347, SC20-1327, and SC20-1662. Doc. 1 at 19, 20.

The state charged Petitioner by second amended information with six counts of lewd or lascivious battery, one count of soliciting a child via computer, and one count of traveling to meet a minor to do unlawful acts. Ex. A at 43. Counts one and two charged Petitioner with placing his penis in or upon the vagina of J.P. between August 1, 2013 and November 7, 2013; counts three and four charged him with placing his mouth on J.P.'s vagina between August 1, 2013 and November 7, 2013; and counts five and six charged him with placing his penis in or upon J.P.'s mouth between August 1, 2013 and November 7, 2013. Id.

The arrest and booking report states, in pertinent part: "The suspect traveled to meet with the victim at a remote location in Hilliard, in Nassau County, where the suspect and the victim engaged in penile/vaginal, penile/oral, and oral/vaginal sexual intercourse on two separate occasions in the backseat

---

[6] Petitioner indicates that he "has given the State of Florida at least (15) fifteen opportunities to correct the . . . double jeopardy issues." Doc. 1-3 at 16.

[7] A review of Petitioner's initial brief in this case reflects that while he mentioned count seven being subsumed by count eight, he did not raise any double jeopardy claims. See Ex. V at 3-4 (cm/ecf pagination). Instead, this was the appeal from the second denial of his Rule 3.850 motion which was solely about his alleged incompetency.

of the suspect's vehicle sometime between September and October 2013." Ex. A at 2 (emphasis added); see also id. at 3-4 (affidavit for search warrant containing similar information from the victim).

During the plea hearing, Petitioner's trial counsel advised the trial court that Petitioner had "authorized [her] to withdraw his previously entered plea of not guilty in case 13-CF-958 and enter guilty pleas to counts one through eight of the information." Ex. C at 4. Petitioner confirmed that he signed the plea of guilty form acknowledging that he was pleading guilty to counts one through eight; he discussed the matter with his counsel and was satisfied with her representation; he understood the rights he was waiving by entering his guilty plea; and he was doing so freely, willingly, and voluntarily. Id. at 6-10; see also Ex. A at 84-85 (executed plea form).[8] The state presented the following factual basis supporting the charges:

> Your Honor, the state would be prepared to prove at trial beyond a reasonable doubt that between the dates of August 1st, 2013 and November 7th of 2013, in the County of Nassau and the State of Florida that the defendant did knowingly use a computer online service, internet service or other device capable of electronic data storage or transmission, that being his cell phone, to seduce, solicit, lure or entice a child,

---

[8] The form is titled: "Plea of Guilty and Negotiated Sentence." Ex. A at 84. However, the "specific terms of negotiated sentence" were: "Following hearing, Court may impose any lawful sentence (min [guideline] 42.9 y[ears] max = life)." Id. Despite the title of the form, the record does not reflect that there were any negotiated terms. Indeed, at the sentencing hearing, the state recommended that the trial court sentence Petitioner to life. Ex. F at 61.

21

that being J.P., to commit any illegal act described in chapter 800 which is lewd or lascivious battery or chapter 827 which would be child porn or to otherwise engage in unlawful sexual contact with J.P. and that the defendant did misrepresent his age.

Further, the state is prepared to prove beyond a reasonable doubt that the defendant did travel a distance within that state by any means and that was by his vehicle to - - for the purpose of engaging in any illegal act as described in section 800 or 827 or engage in any other unlawful sexual contact with J.P. after using his cell phone to solicit or entice or lure her to meet him for those purposes.

Further, the state would prove beyond a reasonable doubt that the defendant did engage in sexual activity with J.P., a person 12 years of age or older but less than 16. Specifically she was 13 at the time.

<u>On two separate incidences</u> he placed his penis in the vagina of J.P.. He placed his penis in the mouth of J.P., and he placed his mouth on the vagina of J.P.[9]

Ex. C at 10-11 (emphasis added). Petitioner's trial counsel stipulated to the factual basis, and the trial court found that the state's proffer was sufficient to form a factual basis as to each count. <u>Id.</u> at 11. The trial court further found that Petitioner entered his guilty pleas freely, willingly, and voluntarily with a

---

[9] The Court has copied the transcript exactly as it reads. However, based on the record, it is apparent that this paragraph should have been transcribed as one sentence with the phrase, "On two separate incidences," modifying each phrase thereafter: "On two separate incidences he placed his penis in the vagina of J.P.<u>., h</u>e placed his penis in the mouth of J.P., and he placed his mouth on the vagina of J.P." (emphasis to show modification).

"sufficient factual basis to support the plea as to each of the eight counts." Id. at 11-12. The state further noted that "[t]here is DNA in this case and it inculpates the defendant in that his DNA was found mixed with the victim's DNA in the - - in two of the four places in the back of the car that were tested of the defendant's car, and further that this sentence will subject him to being - - found to be a sexual predator and therefore Jimmy Ryce would apply." Id. at 13. At the conclusion of the hearing, the trial court asked Petitioner if he had "any questions about what we have done this morning." Id. at 14. Petitioner responded, "No, Your Honor. I would like to say that it has been an honor doing the work that I have been able to do in your jail for the last 15 months. It has been and thank you. Thank you all and you, too, as well, Ms. Thurson" (the prosecutor. Id.

The victim testified at sentencing that she communicated with Petitioner for "almost a year, maybe longer," he texted her "[a]ll day, every day," and he left her threatening voicemails, some of which were played at the hearing. See Ex. F at 26-33, 38. She indicated that she sent him nude photographs of herself, and then when he threatened to share them unless she sent more, she continued to send him photographs. See id. at 29-30. She also testified that she snuck out of her father's house twice to meet Petitioner and have sex. See id. at 30-31, 38.

Petitioner raised the double jeopardy claims relating to counts one through six in his Rule 3.800(a) motion to correct illegal sentence, which the

trial court summarily denied without explanation, Ex. M at 17, and the First DCA per curiam affirmed the denial without issuing a written opinion, Ex. P. He also raised the claims in several state court habeas corpus petitions. See Exs. AA, CC, EE. The first habeas petition was dismissed, with a citation to Baker v. State, 878 So. 2d 1236 (Fla. 2004) (finding that postconviction relief for noncapital defendants must ordinarily be obtained through a Rule 3.850 motion and not a habeas corpus petition). See Ex. BB. The Supreme Court of Florida issued the following opinion on the second petition:

> To the extent petitioner challenges his judgment and sentence, the petition for writ of habeas corpus is hereby denied as procedurally barred. A petition for extraordinary relief is not a second appeal and cannot be used to litigate or relitigate issues that were or could have been raised on direct appeal or in prior postconviction proceedings. See Denson v. State, 775 So. 2d 288, 290 (Fla. 2000); Breedlove v. Singletary, 595 So. 2d 8, 10 (Fla. 1992). To the extent petitioner challenges the sex offender designation, the petition is dismissed without prejudice. Any motions or other requests for relief are hereby denied. No rehearing will be entertained by this Court.

Ex. DD. The third habeas petition was dismissed with a citation to Fla. R. App. P. 9.141(d)(5) (requiring a petition alleging ineffective assistance of appellate counsel be filed no more than 2 years after the judgment and sentence became

final on direct review). <u>See</u> Ex. FF. The fourth petition[10] was "denied as procedurally barred," with similar language as to the second petition. Ex. GG.

The Court addresses these claims in accordance with the deferential standard for federal court review of state court adjudications. The First DCA's decision affirming the denial of Petitioner's Rule 3.800(a) motion is entitled to deference. At the plea hearing, the state proffered facts showing that there were two incidences of each type of sexual misconduct during the relevant time period. Petitioner's trial counsel stipulated to the factual basis, and Petitioner was well-aware that he was pleading to all eight counts. Thus, because the record shows that the state had evidence to show that there were two separate incidences of each lewd or lascivious misconduct charged, there were no double jeopardy violations. Upon thorough review of the record, the Court finds that the state court's adjudication of these claims was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Regardless, the claims have no merit. As such, Grounds Two, Three, and Four are denied.

---

[10] A copy of this state habeas petition does not appear in the record, but Petitioner asserts in the Petition that he raised his double jeopardy claims in this state habeas petition.

## C. Ground Five

Petitioner contends that "[u]pon correction of the illegalities in Grounds Three and Four above the remaining Counts also violate the prohibition against double jeopardy because the [P]etitioner has been punished multiple times for the same proscribed conduct of oral sexual activity (violation of U.S. Const. amend 5, 14)." Doc. 1 at 20; see Doc. 61 at 25-28. Petitioner asserts that he raised this claim in a "9.300 motion" and his state habeas corpus proceedings (case nos. 1D19-3578, 1D20-0347). Doc. 1 at 20-21. He also contends that he raised this Ground in proceedings before the Supreme Court of Florida (case nos. 1D20-1327, 1D20-1662). Id. at 21.

Assuming this claim is properly exhausted, a review of the record shows that Petitioner's claim is meritless. The second amended information describes the three different types of lewd or lascivious behavior in which Petitioner engaged. Florida's lewd or lascivious battery statute "permit[s] punishment for each distinct 'episode' or incident of unlawful sexual activity." Jones v. Sec'y, Dep't of Corr., 778 F. App'x 626, 636 (11th Cir. 2019); see State v. Meshell, 2 So. 3d 132, 136 (Fla. 2009) ("[T]he sex acts proscribed in section 800.04(4) (oral, anal, or vaginal penetration) are of a separate character and type requiring different elements of proof and are, therefore, distinct criminal acts. Thus, punishments for these distinct criminal acts do not violate double jeopardy."). Petitioner confirmed, under oath, that he was pleading guilty because he was

guilty, and his counsel stipulated to the state's factual basis, which noted that Petitioner engaged in each prohibited act on two separate occasions. Considering the record, the Court denies Ground Five.

### D. Ground Six

Petitioner contends that counts seven and eight violate the prohibition against double jeopardy "because the underlying conduct in Count Seven is subsumed in that of Count Eight." Doc. 1 at 21; see Doc. 61 at 22-25. He advises that the supporting facts are the same as the other double jeopardy claims, and that he raised this Ground in his Rule 3.850 motion and in several other proceedings. Doc. 1 at 21-22 (citing case nos. 1D17-5129, 1D19-3578, 1D20-0347, SC20-1327,SC20-1662, and 1D20-3394).

Petitioner, through his postconviction counsel, raised this claim in a Rule 3.800 motion. Ex. B at 276-77. However, Petitioner, through postconviction counsel, subsequently withdrew the Rule 3.800 motion to "allow appellate counsel to undertake this issue as part of a direct appeal." Id. at 295-96. Appellate counsel did not raise the issue on direct appeal.

Respondents assert that Petitioner exhausted this claim by raising it in, inter alia, his pro se Rule 3.800(a) motion. Doc. 27 at 45. However, Petitioner did not raise this claim in his Rule 3.800(a) motion, see Ex. M at 3-6, or in the

appeal therefrom, Ex. N.[11] Additionally, although Petitioner states he raised this issue in case no. 1D19-3578, a review of his brief shows that while he mentioned count seven being subsumed by count eight, he did not raise any double jeopardy claims. See generally Ex. V.

Petitioner did raise this claim as part of his initial Rule 3.850 proceeding. See Ex. Q at 45. In that proceeding, Petitioner filed a motion and several amendments. See id. at 3-46. The trial court summarily denied the motion finding that Petitioner's allegations "are included in, or could have been included in, his two prior appeals to the First District Court of Appeal on direct appeal . . . and on the appeal from the denial of [his] Motion to Correct Illegal Sentence." Id. at 47. Petitioner appealed the denial, and as to this claim, the First DCA affirmed without comment. See Ex. T (reversing on two competency claims but affirming as to all other claims).

Petitioner also raised this claim in several state habeas petitions. The first petition, see Ex. AA at 27-28 (cm/ecf pagination), was dismissed with a citation to Baker, 878 So. 2d at 1236 (finding that postconviction relief for noncapital defendants must ordinarily be obtained through a Rule 3.850 motion and not a habeas corpus petition), see Ex. BB. The second petition, Ex. CC, was "denied as procedurally barred," Ex. DD (explaining that "[a] petition for

---

[11] In Petitioner's pro se Rule 3.800(a) motion, he raised his double jeopardy claims relating to counts one through six.

extraordinary relief is not a second appeal and cannot be used to litigate or relitigate issues that were or could have been raised on direct appeal or in prior postconviction proceedings"). Petitioner contends that he raised this claim in a habeas petition filed with the Supreme Court of Florida, but that petition was also denied as procedurally barred. <u>See</u> Ex. GG.[12]

While it appears at first blush that Petitioner never properly presented this double jeopardy claim regarding counts seven and eight to the state courts, his attempt to present it in his Rule 3.850 motion was improperly rejected. Indeed, the postconviction court found that all of Petitioner's claims could have been raised or were raised on direct appeal or in his Rule 3.800(a) proceeding. Petitioner, however, did not raise this claim in either his direct appeal or Rule 3.800(a) proceeding, and under Florida law, double jeopardy claims may be raised in Rule 3.850 proceedings. <u>See, e.g.</u>, <u>Lippman v. State</u>, 633 So. 2d 1061, 1065 (Fla. 1994) ("[A] double jeopardy claim may be raised in a post-conviction relief proceeding."); <u>Kerrin v. State</u>, 8 So. 3d 395, 396 (Fla. 1st DCA 2009) ("Double jeopardy claims are cognizable in rule 3.850 motions."). Thus, the

---

[12] In a petition alleging ineffective assistance of appellate counsel, Petitioner argued that his appellate counsel was ineffective for failing to raise this double jeopardy issue on direct appeal, and he attached a letter from his appellate counsel acknowledging her error. Ex. EE. The petition, however, was dismissed as untimely. Ex. FF (citing Fla. R. App. P. 9.141(d)(5), which requires a petition alleging ineffective assistance of appellate counsel be filed no more than 2 years after the judgment and sentence became final on direct review).

postconviction court's procedural bar to this claim does not rest on an adequate state law ground that is firmly established and consistently followed. Therefore, this Court will address the claim on the merits.

Petitioner is correct that the Supreme Court of Florida has held that a solicitation conviction (count seven) is subsumed by a traveling conviction (count eight) when based on the same conduct:

> [B]ecause the statutory elements of solicitation are entirely subsumed by the statutory elements of traveling after solicitation, the offenses are the same for purposes of the Blockburger[13] same-elements test codified in section 775.021(4), Florida Statutes. . . . Therefore, double jeopardy principles prohibit separate convictions based upon the same conduct.

State v. Shelley, 176 So. 3d 914, 919 (Fla. 2015).

Nevertheless, following the entry of a guilty plea, the scope of federal habeas review is limited to whether the plea was voluntarily and intelligently made. See United States v. Broce, 488 U.S. 563, 569 (1989) ('[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."); Tollett v. Henderson, 411 U.S. 258, 267 (1973). "Just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads

---

[13] Blockburger v. United States, 284 U.S. 299 (1932).

guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes." Broce, 488 U.S. at 570.

The record supports that conclusion that Petitioner knowingly and voluntarily entered his guilty pleas. He engaged in a colloquy with the trial court, acknowledging that he understood the crimes to which he was pleading guilty and the rights he was waiving, he was satisfied with his counsel's advice, and he knew of the minimum and maximum sentences that the court could impose. He specifically testified that he was not threatened or coerced, and he was freely and voluntarily entering his guilty pleas.

This case is distinguishable from Shelley. In Shelley, the state relied on the same conduct to charge both the solicitation offense and the traveling offense on a single date. See Shelley, 176 So. 3d at 918; Shelley v. State, 134 So. 3d 1138, 1141 (Fla. 1st DCA 2014) ("The State only charged one use of computer devices to solicit, and that charge was based on a solicitation occurring on the same date as the traveling offense." (emphasis added)). Here, each count in the second amended information was charged as occurring between August 1, 2013 and November 7, 2013. It is clear based on the other counts in the charging document, the state's factual basis presented at the plea hearing, and testimony from Petitioner and the victim at the sentencing hearing that there was more than one occasion on which each of these crimes occurred. Thus, it is not apparent from the second amended information alone, or when considered with

31

the entirety of the record, that a double jeopardy violation occurred. Indeed, the record suggests that the state could have proven multiple acts of solicitation during the relevant time period, along with two separate acts of traveling after solicitation. At the plea hearing, the state specifically included in the factual basis that Petitioner used his cell phone "to seduce, solicit, lure or entice a child, that being J.P., <u>to commit any illegal act described in chapter 800 which is lewd or lascivious battery or chapter 827 which would be child porn or to otherwise engage in unlawful sexual contact</u> with J.P." Ex. A at 43 (emphasis added). The state had evidence that Petitioner used his cell phone, <u>inter alia</u>, to solicit nude photographs from the victim on more than one occasion and to arrange to meet her on more than one occasion to engage in unlawful sexual contact. The state also had evidence that Petitioner traveled to meet the victim on two occasions to engage in unlawful sexual contact. By voluntarily pleading guilty, Petitioner admitted that he was guilty of two separate offenses of solicitation and traveling during the time frame charged. The dual convictions for traveling and solicitation were not based on the same conduct and no double jeopardy violation occurred. Ground Six is denied.

### E. Ground Seven

Petitioner asserts that he is actually innocent. Doc. 1 at 22; <u>see</u> Doc. 61 at 29-34. He advises that he raised this claim in a Rule 3.850 motion addressing

newly discovered evidence and in case no. SC20-1662, and he was precluded from raising it in other proceedings. Doc. 1 at 22-23.

Even assuming this claim is properly exhausted, Eleventh Circuit "precedent forecloses habeas relief based on a prisoner's assertion that he is actually innocent of the crime of conviction absent an independent constitutional violation occurring in the underlying state criminal proceeding." Raulerson v. Warden, 928 F.3d 987, 1004 (11th Cir. 2019) (quotations and citations omitted). Petitioner pled guilty to all eight counts, and in doing so, he acknowledged he was pleading guilty because he was guilty. Petitioner's solemn declarations in court carry a strong presumption of truth and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).[14] He cannot now go behind his statements made under oath and contend that he is actually innocent without showing some independent constitutional violation. He has not done so. Nor has

---

[14] At the sentencing hearing, Petitioner testified that he previously worked with government agencies to protect children, and then stated: "There is an irony for some reason that at one point in time in the summer I started to have some kind of memory lapse or something like that. I have absolutely no sickness and I don't understand that at all." Ex. F at 46. He also testified that he "did something that was completely awful" and he "made a horrible mistake," he equivocally accepted responsibility for his actions, and he acknowledged that he deserved punishment. Id. at 45, 52; see id. at 56 ("I will take responsibility for things even if they aren't true, but go ahead, I would have never, unless I had consent.").

Petitioner presented any newly-discovered evidence showing that he is factually innocent of the crimes to which he pled guilty. Thus, Ground Seven is denied.

Accordingly, it is

**ORDERED**:

1.      The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.      If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[15]

---

[15] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

3.    The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of August, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 8/6
c:
Joseph Luis Levin
Counsel of Record